Filed 5/1/26  P. v. Najera CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ALONSO NAJERA,<br><br>    Defendant and Appellant. | G064808<br><br>(Super. Ct. No. 08WF1517)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sheila F. Hanson, Judge. Reversed and remanded with directions.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Steve Oetting, Michael D. Butera and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Jose Alonso Najera challenges the denial after an evidentiary hearing of his petition to vacate his conviction for the second degree murder of his mother. (See Pen. Code, § 1172.6.)[1] Given the very unusual facts of this case—the man Najera hired to kill his father also killed his mother—we conclude Najera's acquittal on first degree murder of his mother precluded a finding that he had intended to kill her. We remand for the court to consider whether Najera remains guilty of his mother's murder under a theory of implied malice. In doing so, the court should consider his youth at the time of the offense.

FACTS

The Orange County District Attorney charged Najera with the murders of both his parents in 1999. According to the evidence at trial, Najera—who was 19 years old at the time of the crimes— had a troubled relationship with his parents. He would steal money from them and squander it. On one occasion, he lost $18,000 in a failed drug deal. When his father discovered this, he made Najera work with him to repay it. Najera resented this, believing his dad was "screwing [him] over." Najera dropped most of his community college classes but concealed this because he believed his parents would send him to live with family in Mexico if they found out. He planned to forge a transcript for them.

It is undisputed that Najera ultimately hired a friend to kill his father. On the night of the crimes, Najera left his bedroom window open after sneaking out of the house. Later that night, the friend entered through that window. He then went to the father's bedroom—the mother had a separate

_____

[1] All statutory references are to this code.

2

bedroom—where he began stabbing him to death. At some point, the mother entered the room and was also stabbed to death.

After the close of evidence, the jury was instructed on both first degree premeditated and deliberate murder and second degree murder. As to the mother's murder only, the jury was also instructed on the theory that Najera was guilty under the natural and probable consequences doctrine. After deliberating, the jury convicted Najera of the first degree murder of his father. But as to the mother, the jury rejected the first degree murder charge and convicted Najera of only second degree murder. The trial court sentenced him to consecutive terms of life without parole.

After the Legislature narrowed murder liability and made those changes retroactive, Najera petitioned to vacate his murder convictions. (See § 1172.6.) The trial court issued an order to show cause as to the mother's murder only. Following an evidentiary hearing, the court denied the petition, finding beyond a reasonable doubt that Najera remained guilty of the mother's murder under current law. The court concluded Najera intended to kill both parents and was thus liable for the mother's murder as either a direct aider and abettor or a coconspirator.

DISCUSSION

In our view, Najera's acquittal of first degree murder as to the mother precluded a finding that he intended to kill her. First degree murder generally requires a premeditated and deliberate intent to kill. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 201 (*Whisenhunt*).) Second degree murder requires either an intent to kill without premeditation and deliberation or implied malice—conscious disregard for human life. (*People v. Knoller* (2007) 41 Cal.4th 139, 151–152.)

3

After Najera's trial, the Legislature amended the law of murder to eliminate liability based on imputed malice, including the natural and probable consequences doctrine. (*People v. Antonelli* (2025) 17 Cal.5th 719, 723–724.) Section 1172.6 provides retroactive relief to defendants convicted under those now-invalid theories. (*Antonelli,* at p. 724.) Under principles of collateral estoppel, a jury's finding at trial precludes a contrary finding in a section 1172.6 hearing. (*People v. Arnold* (2023) 93 Cal.App.5th 376, 385 (*Arnold*); see also *id.* at p. 386 [discussing collateral estoppel].)

We review the trial court's factual findings in denying a section 1172.6 petition for substantial evidence. (*Arnold, supra,* 93 Cal.App.5th at p. 383.) But the preclusive effect of a defendant's partial acquittal is a legal issue we review de novo. (*Ibid.*)

The Attorney General posits a jury could theoretically find an intent to kill yet acquit on first degree murder—if, for example, jurors had reasonable doubt only as to premeditation or deliberation. (See *Whisenhunt, supra,* 44 Cal.4th at p. 201.) That is conceivable in certain cases.

We have a harder time seeing how that could be possible in a contract killing like this one. Najera arranged for a home-invasion murder, left a window open to allow the attack, then vacated the premises. The killings occurred while Najera was away. Under these circumstances, the jury could not have found that Najera intended to kill the mother without also finding that the killing was premeditated and deliberate—Najera's intentions were fixed and implemented well before either victim was killed.

We reject the Attorney General's suggestion that the jury's verdicts were inconsistent and may reflect leniency or compromise, rather than reasonable doubt. The verdicts were perfectly consistent with the jury's belief that Najera intended to kill only his father, with his mother an

4

unintended victim. The jury was instructed on that theory and the evidence supported it: Najera had a specific grievance against his father, who made him work to repay the money he stole. And the killer attacked the father in his bedroom, killing the mother only after she entered the room.

We presume the jury "'meticulously followed'" the trial court's instructions. (*People v. Cruz* (2001) 93 Cal.App.4th 69, 73.) We thus conclude the jury found that Najera lacked an intent to kill the mother, precluding the trial court's contrary finding. (*Arnold, supra*, 93 Cal.App.5th at p. 385.)

The erroneous finding was not harmless. Although the record could have supported liability under a theory of implied malice, the trial court did not evaluate that theory and we cannot conclude it would have reached the same result if it had. Najera was 19 years old at the time of the crimes—"still on the lower end of the young adult age range." (*People v. Jimenez* (2024) 103 Cal.App.5th 994, 1007.) Recent decisions have emphasized that youths may be less able to appreciate risks and consequences and thus that courts must consider defendants' youth in deciding if they acted with implied malice or reckless indifference. (E.g., *id.* at pp. 1001–1004; *People v. Pittman* (2023) 96 Cal.App.5th 400, 416–418 (*Pittman*).) Najera's conduct before the murders—stealing from his parents, squandering the money, and concealing his academic status while planning to forge a transcript—is consistent with youth-related impetuousness.

In this context, a factfinder may well doubt that Najera appreciated the risk his plan posed to his mother's life, even if that risk would be apparent to a more mature adult. Therefore, a reasonable probability exists that the trial court would have granted relief as to the mother absent the error. (See *Pittman, supra*, 96 Cal.App.5th at pp. 417–418 [harmless error standard].)

5

At the same time, the evidence does not foreclose a finding of implied malice. A reasonable factfinder could conclude that arranging a stabbing in a shared home created an obvious and grave risk to the mother's life and that Najera, although young, appreciated and disregarded that risk. We therefore remand for the trial court to reconsider Najera's petition under this framework, with appropriate consideration of Najera's youth.

## DISPOSITION

The order denying Najera's petition as to the murder of his mother is reversed and the matter is remanded for reconsideration.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.